# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-CA-01716-SCT

*MISSISSIPPI STATE AND SCHOOL*
*EMPLOYEES' LIFE AND HEALTH PLAN AND*
*CATALYST RX d/b/a CATALYST RX, INC.*

*v.*

*KCC, INC., AN ALABAMA CORPORATION d/b/a*
*VITAL CARE OF MERIDIAN*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/26/2011 |
| TRIAL JUDGE: | HON. DENISE OWENS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | WILSON D. MINOR |
| | ALAN M. PURDIE |
| | WILLIAM A. DAVIS |
| ATTORNEYS FOR APPELLEE: | RICHARD N. KESSLER |
| | NED MILENKOVICH |
| | PETER T. BERK |
| | GEORGE H. RITTER |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 03/07/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., CHANDLER AND KING, JJ.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.     Mississippi Code Section 83-9-6(3) provides that "[a] health insurance plan, policy, employee benefit plan or health maintenance organization" may not prohibit a participant from selecting a pharmacy that has agreed to meet the terms, requirements, and reimbursement set forth by the insurer, or deny such a pharmacy the right to participate as

a contract provider under the policy or plan. Miss. Code Ann. § 83-9-6(3) (Rev. 2011). KCC, Inc., d/b/a Vital Care of Meridian ("Vital Care") filed a complaint against the Mississippi State and School Employees' Life and Health Plan ("the Plan") and the Plan's pharmacy benefits manager, Catalyst Rx ("Catalyst"), alleging that the Plan and Catalyst had violated Section 83-9-6 by designating Walgreens Pharmacy as the sole provider of specialty pharmacy services. Later, Vital Care moved for partial summary judgment on the question of whether Section 83-9-6 applied to the Plan. The Chancery Court of the First Judicial District of Hinds County granted Vital Care's motion for partial summary judgment, and the Plan and Catalyst have appealed.

¶2.    This Court finds that Section 83-9-6 applies to the Plan because it applies to "all health benefit plans providing pharmaceutical services benefits, including prescription drugs, to any resident of Mississippi" and is not ambiguous. Miss. Code Ann. § 83-9-6(1). Therefore, we affirm the grant of partial summary judgment in favor of Vital Care.

## FACTS

¶3.    Vital Care filed its complaint on April 30, 2010. Vital Care alleged that, since 1997, it has provided specialty pharmacy services to residents of Mississippi. Specialty pharmacy services involve dispensing and monitoring use of specialty drugs used for complex medical conditions, such as cancer, multiple sclerosis, and HIV/AIDS.[1]  Vital Care's specialty

---

[1] At the hearing, counsel for Catalyst stated that the Plan pays an average of $2,000 per prescription for specialty drugs. The participant's co-payment is $65. These drugs represent .4% of all prescriptions filled, but represent more than sixteen percent of the Plan's total prescription drug expenditure. The Plan argued that it made Walgreens the exclusive provider in order to contain the increasing costs the Plan was spending on specialty drugs.

pharmacy services include expertise in complex medical conditions, dispensing complex medications in specialized containers at the appropriate temperature, tailored patient counseling, medication compliance programs, and medical office support. Vital Care alleged that, since 2006, it has participated as an approved provider of specialty pharmacy services under the Plan, and that it has agreed and will continue to agree to provide specialty pharmacy services that meet the Plan's terms and requirements and the Plan's terms of reimbursement.

¶4. Vital Care alleged that, before October 2009, the Plan and Catalyst decided to close the Plan's specialty pharmacy network effective January 1, 2010, at which time Walgreens Specialty Pharmacy would become the sole approved provider of specialty pharmacy services under the Plan. This decision was made and implemented by the State and School Employees' Health Insurance Management Board, which administers the Plan. Miss. Code Ann. § 25-15-303(3) (Supp. 2012). Vital Care alleged that the Plan and Catalyst took this action after Catalyst received an eight-million dollar payment from Walgreens "in conjunction with forming an entity related to specialty pharmacy services and extending contracts with Walgreens for mail order and specialty pharmacy services." Vital Care alleged that the Plan and Catalyst's actions violated Section 83-9-6, because Vital Care continues to meet or exceed all requirements for participation in the Plan and has agreed to the terms of reimbursement. Vital Care alleged that closure of the Plan's specialty pharmacy network will cause it to lose a significant number of customers.

¶5. Vital Care requested injunctive relief pursuant to Section 83-9-6(6), which provides that "[a] violation of this section creates a civil cause of action for injunctive relief in favor

3

of any person or pharmacy aggrieved by the violation." Miss. Code Ann. 83-9-6(6) (Rev. 2011). Vital Care requested preliminary or permanent injunctive relief to enjoin the Plan and Catalyst from excluding Vital Care from the Plan's specialty pharmacy network, and from informing Plan beneficiaries that Vital Care is not an approved provider of specialty pharmacy services. Vital Care also requested a declaratory judgment that the Plan's decision to close the specialty pharmacy network and select an exclusive provider for specialty pharmacy services violates Section 83-9-6.

¶6.     After the Plan and Catalyst answered the complaint, Vital Care moved for partial summary judgment limited to the question of whether Section 83-9-6 applies to the Plan. The Plan and Catalyst filed responses, and Vital Care filed a reply to each response. A hearing occurred on October 18, 2010. The chancellor found that no genuine issue of material fact existed and that Section 83-9-6 applies to the Plan. Finding that there was no just reason for delay, the chancellor entered a final judgment under Mississippi Rule of Civil Procedure 54(b), and granted the parties' joint request for a stay pending appeal. The Plan and Catalyst have appealed.

## STANDARD OF REVIEW

¶7.     Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." M.R.C.P. 56(c). This Court affords de novo review to the grant or denial of summary judgment. *Miss. Dep't of Env. Quality v. Pac. Chlorine, Inc.*, 100 So. 3d 432, 439 (Miss. 2012).

## LAW AND ANALYSIS

### A. Whether Section 83-9-6 Applies to the Plan

¶8.　　The narrow question before the Court is whether Section 83-9-6 applies to the Plan.[2]

Section 83-9-6, enacted in 1994, is known as an "Any Willing Provider" statute. Miss. Laws,

1994, Ch. 475 §1. Section 83-9-6(1) provides:

> 83-9-6. **Pharmaceutical services and prescription drug benefits**
>
> (1) ***This section shall apply to all health benefit plans providing pharmaceutical services benefits, including prescription drugs, to any resident of Mississippi. This section shall also apply to insurance companies and health maintenance organizations that provide or administer coverages and benefits for prescription drugs.*** This section shall not apply to any entity that has its own facility, employs or contracts with physicians, pharmacists, nurses and other health care personnel, and that dispenses prescription drugs from its own pharmacy to its employees and dependents enrolled in its health benefit plan; but this section shall apply to an entity otherwise excluded that contracts with an outside pharmacy or group of pharmacies to provide prescription drugs and services.

Miss. Code Ann. § 83-9-6(1) (Rev. 2011) (emphasis added). Subsection (2)(c) states that

"'Health benefit plan' means any entity or program that provides reimbursement for

pharmaceutical services." Subsection (3) states, in part:

> (3) A health insurance plan, policy, employee benefit plan or health maintenance organization may not:
>
> > (a) Prohibit or limit any person who is a participant or beneficiary of the policy or plan from selecting a pharmacy or

---

[2] The question of whether the designation of Walgreens to be the exclusive provider of specialty drugs violates Section 83-9-6 is not before the Court, because it was not encompassed by the chancery court's grant of partial summary judgment. *See* M.R.C.P. 54(b) (providing for entry of final judgment on fewer than all of the claims before the court).

pharmacist of his choice who has agreed to participate in the plan according to the terms offered by the insurer;

(b) Deny a pharmacy or pharmacist the right to participate as a contract provider under the policy or plan if the pharmacy or pharmacist agrees to provide pharmacy services, including but not limited to prescription drugs, that meet the terms and requirements set forth by the insurer under the policy or plan and agrees to the terms of reimbursement set forth by the insurer; . . . .

Miss. Code Ann. § 83-9-3(3). Subsections (6)-(9) provide:

(6) A violation of this section creates a civil cause of action for injunctive relief in favor of any person or pharmacy aggrieved by the violation.

(7) The Commissioner of Insurance shall not approve any health benefit plan providing pharmaceutical services which does not conform to this section.

(8) Any provision in a health benefit plan which is executed, delivered or renewed, or otherwise contracted for in this state that is contrary to this section shall, to the extent of the conflict, be void.

(9) It is a violation of this section for any insurer or any person to provide any health benefit plan providing for pharmaceutical services to residents of this state that does not conform to this section.

Miss. Code Ann. § 83-9-6(6)-(9).

¶9. The Plan does not dispute that it is a "health benefit plan" as defined in Section 83-9-6(2)(c), or that Section 83-9-6(1) applies to "all health benefit plans." The Plan contends that, because other statutes conflict with Section 83-9-6, there is ambiguity as to whether Section 83-9-6 applies to the Plan. The Plan argues that, due to this ambiguity, this Court must engage in statutory construction and reach the conclusion that the Legislature did not intend for Section 83-9-6 to apply to the Plan. Vital Care argues that Section 83-9-6 is not

6

ambiguous, because the word "all" plainly encompasses all health benefit plans, including the Plan.

¶10.    "When the language used by the legislature is plain and unambiguous . . . and where the statute conveys a clear and definite meaning . . . the Court will have no occasion to resort to the rules of statutory interpretation." *Miss. Ethics Comm'n v. Grisham*, 957 So. 2d 997, 1001 (Miss. 2007) (quoting *Marx v. Broom*, 632 So. 2d 1315, 1318 (Miss. 1994)). "Courts have a duty to give statutes a practical application consistent with their wording, unless such application is inconsistent with the obvious intent of the legislature." *Grisham*, 957 So. 2d at 1001 (quoting *Marx*, 632 So. 2d at 1318). If a statute is deemed ambiguous and the Court resorts to statutory construction, then "all statutes in pari materia are taken into consideration and the legislative intent is deduced from the consideration as a whole." *Id.* at 1002 n.8 (quoting *Williams v. Farmer*, 876 So. 2d 300, 303 (Miss. 2004)).

¶11.    Section 83-9-6 is not ambiguous. The statute states that it applies to *all* health benefit plans, and the Plan undisputedly is a health benefit plan. The Plan makes several arguments that, due to conflicts with other statutes, Section 83-9-6 is ambiguous. We address each argument in turn.

    *1. Section 83-1-101*

¶12.    Section 83-9-6 is contained within Title 83, which is titled "Insurance." Chapter 1 of Title 83 is titled "Department of Insurance." Under Mississippi Code Section 83-1-1, the Department of Insurance is "charged with the execution of all laws (except as otherwise specifically provided by statute) now in force . . . relative to all insurance and all insurance

7

companies, corporations, associations, or orders." Miss. Code Ann. § 83-1-1 (Rev. 2011).

Section 83-1-101 sets out the jurisdiction of the Department of Insurance, stating:

> § 83-1-101. **Department of Insurance; jurisdiction; exception**
>
> Notwithstanding any other provision of law to the contrary, and except as provided herein, ***any person or other entity which provides coverage*** in this state for medical, surgical, chiropractic, physical therapy, speech pathology, audiology, professional mental health, dental, hospital, or optometric expenses, whether such coverage is by direct payment, reimbursement, or otherwise, ***shall be presumed to be subject to the jurisdiction of the State Department of Insurance, unless the person or other entity shows that while providing such services it is subject to the jurisdiction of another agency of this state, any subdivisions thereof, or the federal government.***

Miss. Code Ann. § 83-1-101 (Rev. 2011) (emphasis added).

¶13. The Plan argues that it is subject to the jurisdiction of another agency, namely, the State and School Employees' Health Insurance Management Board ("the Board"). The Plan submitted the affidavit of the Commissioner of Insurance, Mike Chaney, stating that the Department of Insurance does not regulate the Plan. Rather, the Plan is administered by the Board, which is under the umbrella of the Department of Finance and Administration. Under Section 25-15-5, the Board "administer[s] the plan and is authorized to adopt and promulgate rules and regulations for its administration." Miss. Code Ann. § 25-15-5 (Rev. 2010). It must develop a five-year strategic plan for the Plan, which must address:

> (a) Changing trends in the health care industry, and how they [affect] delivery of services to members of the plan.
>
> (b) Alternative service delivery systems.
>
> (c) Any foreseeable problems with the present system of delivering and administering health care benefits in Mississippi.
>
> (d) The development of options and recommendations for changes in the plan.

8

Miss. Code Ann. § 25-15-5 (Rev. 2010). The Board has "the sole authority to promulgate rules and regulations governing the operations of the insurance plans and shall be vested with all legal authority necessary and proper to perform this function including. . . defining the scope and coverages provided by the insurance plan." Miss. Code Ann. § 25-15-303(3)(a) (Rev. 2010). The State Insurance Commissioner sits on the Board. Miss. Code Ann. § 25-15-303(2)(c) (Rev. 2010).

¶14. The Plan argues that Section 83-1-101 creates ambiguity. It argues that, because the Plan is not subject to the jurisdiction of the Department of Insurance, then Section 83-9-6, an insurance statute, cannot apply to the Plan. However, a finding that Section 83-9-6 applies to the Plan would not subject the Plan to the jurisdiction of the Department of Insurance. Section 83-9-6 is self-executing because it creates a private right of action for aggrieved participants and pharmacies. Miss. Code Ann. § 83-9-6(6) (Rev. 2011). Although Section 83-9-6(7) states that "[t]he Commissioner of Insurance shall not approve any health benefit plan providing pharmaceutical services which does not conform to this section," that subsection relates only to health insurance plans that, unlike the Plan, are required to obtain the Commissioner's approval. Miss. Code Ann. 83-9-6(7) (Rev. 2011). Further, as noted by Vital Care, Section 83-1-101 excludes the Plan only from the jurisdiction of the Department of Insurance, not from the entire Insurance Code.

¶15. The Plan cites an Attorney General's Opinion which examined the statutes cited above and concluded that "the provisions of Title 83, . . . which are placed squarely within the jurisdiction of the Department of Insurance, are not applicable to the State and School

Employees Health Insurance Plan." *Martinson*, Miss. Op. Atty. Gen. 2002-0668 (Dec. 6, 2002). However, the Attorney General's Opinion focused on Sections 83-9-31 and 83-9-5. Section 83-9-31 deals with coverage for alcoholism care and treatment; Section 83-9-5 sets out the required provisions for insurance policies. Miss. Code Ann. 83-9-31 (Rev. 2011); Miss. Code Ann. 83-9-5 (Supp. 2012). Both of those sections deal with the scope and coverage of an insurance policy, matters soundly within the jurisdiction of the Board under Section 25-15-303(3). An Attorney General's Opinion is merely persuasive authority, ***Pratt v. Gulfport-Biloxi Regional Airport Authority***, 97 So. 3d 68, 75 n.4 (Miss. 2012), and we reject the Opinion's broad conclusion that no part of Title 83 applies to the Plan.

¶16.    Further, another section of Title 83, Section 83-9-8, specifically states that it applies to the Plan. Section 83-9-8 prevents insurers from denying coverage of cancer drugs on the ground that the drug has not been approved by the Food and Drug Administration. Miss. Code Ann. § 83-9-8(1) (Rev. 2011). Section 83-9-8 provides a definition of "insurance policy" stating that "the term shall include all health insurance plans for the state and its political subdivisions." Miss. Code Ann. § 83-9-8(3)(a). Because Section 83-9-8 deals with the scope and coverage of an insurance policy, a matter committed to the Board, the Legislature specifically announced that the section applies to the Plan. The specific applicability of Section 83-9-8 to the Plan shows that the Plan does not have a blanket exemption from the entire Insurance Code.

*2. Section 25-15-303(3)(a)*

¶17.    Section 25-15-303(3)(a) states that the Board has "the sole authority to promulgate rules and regulations governing the operation of the insurance plans and shall be vested with

10

all legal authority necessary and proper to perform this function including. . . defining the scope and coverages provided by the insurance plan." Miss. Code Ann. § 25-15-303(3)(a). The Plan argues that its authority to define the scope and coverages provided by the Plan conflicts with Section 83-9-6. We disagree, because Section 83-9-6 does not interfere with the Plan's scope and coverage. Section 83-9-6 requires the Plan to allow the participation of all providers that meet the Plan's terms and requirements and terms of reimbursement. This requirement does not interfere with the Board's mandate to define the Plan's scope and coverage. The Board defines the scope and coverage for specialty drugs by determining what drugs the Plan will cover, what rates of reimbursement will apply, and whether the Plan will have a separate network for specialty drugs. But, once the Board makes these scope and coverage determinations, Section 83-9-6 restricts the Plan from excluding providers that agree to the Plan's terms and requirements and terms of reimbursement. No conflict or ambiguity is created by Section 25-15-303(3)(a).

### 3. Section 83-9-8

¶18. Section 83-9-8 prevents insurers from denying coverage of cancer drugs on the ground that the drug has not been approved by the Food and Drug Administration. Miss. Code Ann. § 83-9-8(1) (Rev. 2011). Section 83-9-8 defines "insurance policy" as including "all health insurance plans for the state and its political subdivisions." Miss. Code Ann. § 83-9-8(3)(a). The Plan argues that, as in Section 83-9-8, when the Legislature intends for an insurance statute to encompass the Plan, it expressly provides that the State is within the statute's reach. The Plan contends that, because Section 83-9-6 does not expressly state that it applies to the State, the statute does not apply to the Plan.

11

¶19. Section 83-9-8 deals with the scope and coverage of insurance policies by requiring them to cover cancer drugs unapproved by the FDA. But under Section 25-15-303(3), defining the scope and coverage of the Plan is committed to the Board. Therefore, the Legislature had to include specific language to make Section 83-9-8 applicable to the Plan. In contrast, Section 83-9-6 does not interfere with the Board's authority to define the scope and coverage of the Plan, and no specific language was needed to include the Plan. The Plan was included by the language "all health benefit plans." Section 83-9-8 does not create ambiguity as to the applicability of Section 83-9-6 to the Plan.

### 4. Deference

¶20. An agency's interpretation of its governing statutes is reviewed de novo, but with deference to the agency's interpretation. *Diamond Grove Center, LLC v. Miss. State Dep't of Health*, 98 So. 3d 1068, 1071 (Miss. 2012). This Court has held that "unless an agency's interpretation of a [governing] statute 'is repugnant to the plain meaning thereof, [the courts are] to defer to the agency's interpretation.'" *Id.* (quoting *Queen City Nursing Center, Inc. v. Miss. State Dep't of Health*, 80 So. 3d 73, 84 (Miss. 2011)). But "[t]his does not mean that we 'yield judgment or opinion' to an agency's statutory interpretation; indeed, '[t]he ultimate authority and responsibility to interpret the law, including statutes, rests with this Court.'" *Id.* While the agency's interpretation is "an important factor that usually warrants strong consideration," we give no weight to an agency interpretation that "is so plainly erroneous or so inconsistent with either the underlying regulation or statute as to be arbitrary, capricious, or contrary to the unambiguous language or best reading of a statute." *Id.* (citing

statute. ***Dialysis Solution, LLC v. Miss. State Dep't of Health***, 31 So. 3d 1204, 1211 (Miss. 2010)).

¶21.   The Plan argues that this Court must defer to the Board's construction of its governing statute, Section 25-15-303(3), which grants the Board the sole authority to define the scope and coverage of the Plan.  The Board argues that it examined Section 25-15-303(3) and determined that Section 83-9-6 does not apply to the Plan, and that this agency decision is entitled to deference.[3]   But because Section 83-9-6, which applies to "all health benefit plans" is not ambiguous, the Board's interpretation is contrary to the unambiguous terms of Section 83-9-6 and no deference is due.

¶22.   Further, even if Section 83-9-6 were ambiguous, no deference would be due to the Board's determination that it is not governed by Section 83-9-6.  This Court has stated that it gives deference to an agency's interpretation of its governing statutes because of "our realization that the everyday experience of the administrative agency gives it familiarity with the particularities and nuances of the problems committed to its care which no court can hope to replicate."  ***Miss. Methodist Hosp.***, 21 So. 3d at 606 (quoting ***Gill v. Miss. Dep't of Wildlife Conservation***, 574 So. 2d 586, 593 (Miss. 1990).  While agency deference applies to an agency's interpretation of its governing statutes, no deference is due to an agency's attempt to select the statutes that govern its operations.

B.  Applicability of the Chancellor's Decision to Catalyst

---

[3] There is no evidence in the record, such as meeting minutes, showing that the Board engaged in any statutory analysis before designating Walgreens as the sole provider.

13

¶23. Catalyst argues that Section 83-9-6 does not apply to Catalyst, because Catalyst is the Plan's third-party administrator, not a "health benefit plan[] providing pharmaceutical services benefits," an insurance company, or a health maintenance organization. Miss. Code Ann. § 83-9-6. Catalyst makes two arguments: (1) that the chancellor did not address whether Section 83-9-6 applies to Catalyst, and (2) that the "lower court's decision applying the statute to Catalyst is wrong as a matter of law." Catalyst admits, however, that if the statute applies to the Plan, then Catalyst, as the Plan's agent, cannot perform any act that the Plan could not perform.

¶24. We have examined the chancellor's Order granting summary judgment and Order of Certification of Final Judgment, and find that the chancellor did not hold that Section 83-9-6 applies to Catalyst. The Order states:

> The Court hereby finds that no genuine issue of material fact exist[s] as to the question of whether Mississippi Code Annotated 83-6-9 [sic] applies to the Mississippi State and School Employees' Life and Health Plan ("the Plan"). The Court finds that Section 83-6-9 [sic] does apply to this matter. Therefore, the Plaintiff is entitled to a partial summary judgment as a matter of law, to that effect.

The final judgment order states:

> Vital Care asserted two claims for relief in its Complaint: (1) a request for an injunction requiring the Defendants to allow Vital Care to provide specialty pharmacy services to Plan participants and (2) a declaratory judgment that the Any Willing Provider Statute, Mississippi Code 83-9-6, *applies to the Plan* and the Defendants' actions violate the Any Willing Provider Statute. On August 4, 2010, Vital Care filed a Motion for Partial Summary Judgment seeking a declaration from this Court that Mississippi Code Annotated 83-9-6 applies to the Plan. After hearing argument of counsel on this matter, the Court . . . granted Vital Care's Motion for Partial Summary Judgment, finding that Section 83-9-6 *applies to the Plan* ("the Order").

(Emphasis added.)

14

¶25. It is plain from the chancellor's orders that the grant of partial summary judgment was limited to the question of whether Section 83-9-6 applies to the Plan. The chancellor did not hold that Section 83-9-6 applies to Catalyst. Because the chancellor did not hold that Section 83-9-6 applies to Catalyst, this issue is without merit.

## CONCLUSION

¶26. Section 83-9-6 applies to the Plan because it applies to "all health benefit plans providing pharmaceutical services benefits, including prescription drugs, to any resident of Mississippi" and is not ambiguous. Therefore, we affirm the grant of partial summary judgment in favor of Vital Care.

¶27. **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, PIERCE, KING AND COLEMAN, JJ., CONCUR.**