# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CC-01179-COA

KAYLA VAUGHN                                                                              APPELLANT

v.

PUBLIC EMPLOYEES' RETIREMENT SYSTEM                                        APPELLEE
OF MISSISSIPPI

DATE OF JUDGMENT:              06/21/2013
TRIAL JUDGE:                   HON. WINSTON L. KIDD
COURT FROM WHICH APPEALED:     HINDS COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:       JIM WARREN III
                               JACOB THOMAS EVANS STUTZMAN
                               JOSHUA REID DANIEL
ATTORNEY FOR APPELLEE:         JANE L. MAPP
NATURE OF THE CASE:            CIVIL - STATE BOARDS AND AGENCIES
TRIAL COURT DISPOSITION:       AFFIRMED THE DECISION OF THE
                               PUBLIC EMPLOYEES' RETIREMENT
                               SYSTEM TO PAY THE ACTUARIAL
                               EQUIVALENT OF GUARANTEED
                               PAYMENTS TO THE RETIREE'S
                               STATUTORY SUCCESSORS
DISPOSITION:                   AFFIRMED - 02/10/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

   EN BANC.

   MAXWELL, J., FOR THE COURT:

¶1.    When a member of Mississippi's Public Employees' Retirement System (PERS)

chooses to receive reduced monthly retirement payments throughout her life in exchange for

guaranteed payments to her beneficiary for twenty years, who gets the remaining guaranteed

payments if both the retiree and the beneficiary die before the twenty-year period runs out?

According to PERS, the *retiree*'s surviving family members do. But appellant Kayla Vaughn

says PERS is wrong. Instead, Kayla argues PERS is directed by statute to pay her, the *beneficiary*'s surviving family member, even though she is not related to the retiree.

¶2. PERS's payment to the retiree's surviving family members complied with both the language of the relevant statute and the retiree's chosen payment option before the statute existed. Yet Kayla asks us to invert the statute and instead declare that an exception to the statute is really the rule. But the clear rule is that, when both the retiree and her designated beneficiary die, the actuarial equivalent of any future guaranteed payments goes to the retiree's surviving family members. And the limited exception is that any uncashed checks PERS had issued to the beneficiary and any cost-of-living adjustment based on past payments to the beneficiary go to the beneficiary's surviving family members.

¶3. After review, we find PERS followed this rule and its limited exception and, in doing so, gave effect to the retiree's intent when selecting her payment option.

¶4. We therefore affirm.

### Background Facts and Procedural History

¶5. Marjorie Kahn was a state employee and consequent member of PERS. In October 1999, she applied for disability retirement. Like other applicants, she was given a choice of payment options. She chose "Option 4-B." *See* Miss. Code Ann. § 25-11-115(1) (Rev. 1999). Under this option, Marjorie would receive "[a] reduced retirement allowance" throughout her life in exchange for "the further guarantee of payment to the named beneficiary, beneficiaries, or to the estate, for a specified number of years certain." *Id.* And if she or her last designated beneficiary died "prior to receiving all guaranteed payments

2

due," then "the actuarial equivalent of the remaining payments would be paid to the estate of the retired as intestate property." *Id.*

¶6.     Majorie named her daughter, Heather Vaughn, as her beneficiary. Marjorie named no other contingent beneficiary. Soon after making these elections, Marjorie died. So under Option 4-B, PERS began making monthly payments to Heather in the amount of $922.63, guaranteeing these monthly payments for twenty years, through October 2019.

¶7.     Six months after Marjorie's death, the Legislature amended section 25-11-115(1). The revised Option 4-B directed PERS, in the event "the retired member or the last designated beneficiary both die before receiving all guaranteed payments due," to pay "the actuarial equivalent of the remaining payments . . . under [the newly created] Section 25-11-117.1(1)[.]" Miss. Code Ann. § 25-11-115(1) (Rev. 2010) (citing Miss. Code Ann. § 25-11-117.1(1) (Rev. 2010), *enacted by* 2000 Miss. Laws, Ch. 628, § 2 (H.B. 1281)).

¶8.     In August 2011, Heather also died. Traveling under revised Option 4-B, PERS calculated the actuarial equivalent of the more than eight years of remaining guaranteed payments to be $110,163. PERS then looked to section 25-11-117.1(1), which, according to PERS, directed it to pay the remaining money to Marjorie's statutory successors.[1] So

---

[1] Under section 25-11-117.1(1):

> Except as otherwise provided in subsection (2) of this section, where benefits are payable to a designated beneficiary or beneficiaries under this article and the designated beneficiary or beneficiaries as provided by the member on the most recent form filed with the system is deceased or otherwise disqualified at the time such benefits become payable, the following persons, in descending order of precedence, shall be eligible to receive such benefits:

PERS contacted Marjorie's family to determine which of Marjorie's surviving family members were entitled to this payment.

¶9. PERS also contacted Heather's family, informing them that, based on subsection (2) of section 25-11-117.1, they were entitled to a prorated cost-of-living adjustment for the portion of the 2011-2012 fiscal year when Heather was still alive and received monthly payments. *See* Miss. Code Ann. § 25-11-117.1(2).[2]

(a)    The surviving spouse of the member or retiree;
(b)    The children of the member or retiree or their descendants, per stirpes;
(c)    The brothers and sisters of the member or retiree or their descendants, per stirpes;
(d)    The parents of the member or retiree;
(e)    The executor or administrator on behalf of the member or retiree's estate;
(f)    The persons entitled by law to distribution of the member or retiree's estate.

[2] Under section 25-11-117.1(2):

Any monthly benefits payable to a beneficiary who dies prior to cashing his or her final check(s) and/or any additional benefits payable pursuant to Section 25-11-112 still payable at the death of a beneficiary receiving monthly benefits shall be paid as follows:

(a)    The surviving spouse of the beneficiary;
(b)    The children of the beneficiary or their descendants, per stirpes;
(c)    The brothers and sisters of the beneficiary or their descendants, per stirpes;
(d)    The parents of the beneficiary;
(e)    The executor or administrator on behalf of the beneficiary's estate;
(f)    The persons entitled by law to distribution of the beneficiary's estate.

¶10.  At this point, Heather's half-sister, Kayla Vaughn, objected to PERS distributing the actuarial equivalent of the remaining payments to Marjorie's statutory successors.  Instead, Kayla insisted that even though she is not related to Marjorie,[3] PERS should give her the remainder of Marjorie's retirement benefits.

¶11.  As Kayla saw it, the $110,163 should have been paid to Heather's statutory successors under section 25-11-117.1(2), not retiree Marjorie's statutory successors under section 25-11-117.1(1).  When PERS rejected her position, Kayla asked for and was granted an administrative hearing before the Claims Committee for the PERS Board of Trustees.  *See* Miss. Code Ann. § 25-11-120(1) (Rev. 2010).  The Committee confirmed the $110,163 was to be paid to *Marjorie*'s successors under subsection (1), not Heather's successors under subsection (2).  And the Board of Trustees adopted the Committee's recommendation.

¶12.  Kayla then appealed to the Hinds County Circuit Court.  *See* Miss. Code Ann. § 25-11-120(2).  The circuit court affirmed PERS's decision.  But the court did grant Kayla's request to enjoin PERS from disbursing the $110,163 to Marjorie's successors until Kayla's appeal before this court is finally resolved.

**Discussion**

**I.      Marjorie's Intent**

¶13.  While PERS and Kayla hotly dispute the significance of the language in both revised Option 4-B and section 25-11-117.1, neither has disputed that this language controls, despite

---

[3]  Heather and Kayla shared the same father but had different mothers.

the fact that section 25-11-117.1 was not even part of the PERS retirement statutes when Marjorie selected Option 4-B. Still, our law is clear that these statutes cannot be applied in a way that defeats the clear intention of the deceased retired member. *In re Estate of Dillon*, 632 So. 2d 1298, 1303-04 (Miss. 1994); *see also Pub. Emps' Ret. Sys. v. Porter*, 763 So. 2d 845, 849-50 (¶¶14-16) (Miss. 2000).

¶14.    By selecting Option 4-B—as that option existed in 1999—Marjorie's intent was obvious. She chose the particular option that ensured her that if she and Heather both die before all guaranteed payments were made, Majorie's intestate estate—i.e., Marjorie's statutory heirs—would receive the actuarial equivalent of the remaining payments. This much is crystal clear. And it is inconceivable from the PERS statutes in effect at the time of Majorie's retirement application and soon-after death that Marjorie intended any remaining retirement benefits would go to Heather's heirs, should Heather die before all payments were made.

¶15.    So even if we were to agree with the dissent that Kayla's interpretation of sections 25-11-115(1) and 25-11-117.1 was correct—which we do not—we would still have to reject this interpretation *as applied* to Marjorie's retirement benefits. *See Porter*, 763 So. 2d at 849-50 (¶¶14-16). Had PERS done what Kayla and the dissent suggest and paid Heather's heirs, instead of Marjorie's, it would have unconstitutionally impaired Marjorie's contractual right to have *her* heirs receive the remainder of her retirement if both she and Heather died before all guaranteed payments were made. *Id.* (citing U.S. Const. art. I, § 10; Miss. Const. art. 3, § 16).

6

¶16. Unlike Kayla's and the dissent's personal interpretations, PERS's interpretation of section 25-11-117.1 has the advantage of actually effecting Majorie's intent. And because Kayla's interpretation directly conflicts with Majorie's clear intent—that *her* next of kin, not Heather's, would receive any remaining guaranteed payments if both she and Heather died before 2019—we must reject it.

## II. PERS's Interpretation

¶17. Furthermore, PERS's interpretation has the additional advantage of being supported by the statute's language.

### A. Standard of Review

¶18. Because this appeal raises a question of statutory interpretation, Kayla asserts we must review PERS's decision de novo. While it is true that "[a]n agency's interpretation of its governing statutes is reviewed de novo," our supreme court has said we must conduct this review "with deference to the agency's interpretation." *Miss. State & Sch. Emps' Life & Health Plan v. KCC, Inc.*, 108 So. 3d 932, 939 (¶20) (Miss. 2013). "[W]hen determining the most reasonable and appropriate interpretation of a statute, the agency's interpretation is an important factor that usually warrants strong consideration." *Diamond Grove Ctr., LLC v. Miss. State Dep't of Health*, 98 So. 3d 1068, 1071 (¶9) (Miss. 2012). So "unless an agency's interpretation of a governing statute is repugnant to the plain meaning thereof, the courts are to defer to the agency's interpretation." *Id.*

¶19. Stated differently, we only "give no weight to an agency interpretation" when it "is so plainly erroneous or so inconsistent with either the underlying regulation or statute as to

7

be arbitrary, capricious, or contrary to the unambiguous language or best reading of a statute." *KCC*, 108 So. 3d at 939 (¶20). This means we cannot take the dissent's approach and substitute PERS's interpretation of section 25-11-117.1 with our personal preference of how to read the statute. We must instead uphold PERS's decision to pay Majorie's heirs, not Heather's, so long as its statutory interpretation was not so inconsistent with the relevant statutes as to be arbitrary and capricious. Because we find PERS's decision was based on a reasonable interpretation of sections 25-11-115(1) and 25-11-117.1(1), consistent with the "best reading" of these statutes, and certainly not arbitrary and capricious, we must affirm.

### B.    *"Monthly Benefits Payable"*

¶20.    Revised Option 4-B directs that, when both the retiree and her named beneficiary have died, "the actuarial equivalent of the remaining payments shall be paid under Section 25-11-117.1(1)." Miss. Code Ann. § 25-11-115(1) (Rev. 2010). Section 25-11-117.1(1) begins by noting there is an exception—"Except as otherwise provided in subsection (2) . . . ." Kayla argues this "prefatory phrase" is there to steer PERS immediately to subsection (2) and first determine if its provisions apply. If they do, then according to Kayla the rest of subsection (1) "is negated" and has no application whatsoever.

¶21.    As one would imagine, Kayla argues subsection (2) applies here. Under this subsection, "Any monthly benefits payable to a beneficiary who dies prior to cashing his or her final check(s) and/or any additional benefits payable pursuant to Section 25-11-112 still payable at the death of a beneficiary receiving monthly benefits shall be paid . . . [to] brothers and sisters of the beneficiary" when the beneficiary has no surviving spouse or descendants.

8

Miss. Code Ann. § 25-11-117.1(2). Kayla claims, since Option 4-B guaranteed Heather monthly payments for twenty years, the remaining eight years of payments were "monthly benefits payable to a beneficiary who dies prior to cashing his or her final check(s)[.]" Miss. Code Ann. § 25-11-117.1(2).

¶22. In other words, Kayla is arguing that all twenty years worth of checks were "monthly benefits payable" to Heather the moment Marjorie died. She claims they belonged to the beneficiary, Heather, not the retiree, Marjorie. Thus, they should have passed to Heather's statutory successors. Kayla suggests that, if Marjorie had wanted one of *her* relatives to receive the money if Heather died, Majorie should have named a contingency beneficiary.

¶23. Likewise, the dissent points to the lack of a contingent beneficiary as justification for awarding the remainder of Marjorie's retirement benefits to someone that is not her heir. *See* Dis. Op. at (¶63). But the very fact Marjorie *could* have named a contingent beneficiary undercuts Kayla's argument that all twenty years worth of retirement benefits fully vested in Heather the moment Marjorie died. Had Marjorie named a contingent beneficiary, the remaining payments would have gone directly to that person, not Heather. And Heather would have had zero ability to override Marjorie's designation and redirect to whom the remaining payments would go in the event of her own death. Further, Marjorie did not have to name a contingent beneficiary to control what would happen to her benefits if both she and Heather died before 2019. That is because Option 4-B has a *built-in contingency*. In this scenario, the built-in contingency directed that the remaining benefits would be paid to Marjorie's heirs. So by selecting Option 4-B, Marjorie directed exactly what would happen

9

to her benefits in this event.

¶24.    The dissent's preferred method only works if all the remaining monthly payments vested in Heather the moment Majorie died.  But this was not so.  Heather only had a right to each monthly payment the month its became "payable"—i.e., due and owing.  At no point could Heather have demanded PERS hand over the remaining payments early.  Thus, the only "monthly benefits payable" to Heather at the time she died death were the monthly payments that had *already become due*.  No future monthly payments were "payable" to Heather once she died.  Instead, the remaining monthly payments had to be paid according to Option 4-B.

### C.    The Exception and the Rule

¶25.    Revised Option 4-B is clear.  It specifically says that the actuarial equivalent of the remaining payments shall be paid under *subsection (1)* of section 25-11-117.1.  Revised Option 4-B does not reference section 25-11-117.1 generally, nor does it mention subsection (2) specifically.  Instead, it specifically directs PERS to act under the provision of **subsection (1)** of 25-11-117.1.  Miss. Code Ann. § 25-11-115(1) (Rev. 2010).

¶26.    Kayla skirts this clear directive by arguing subsection (1) begins with a redirect to subsection (2).  The dissent echos this view.  *See* Dis. Op. at (¶65).  Essentially, they argue the *exception* to subsection (1) is the actual rule.  But this argument practically renders the provisions of subsection (1) irrelevant—the very provision section 25-11-115(1) expressly says shall govern.

¶27.    According to Kayla and the dissent, subsection (1) would only apply when the

10

beneficiary predeceases the retiree. While we agree that this scenario certainly is possible, the obvious anticipated outcome is that the retiree will predecease the beneficiary. After all, the whole reason a retiree names a beneficiary is for the perceived and much more probable outcome that the retiree will die first. But as Kayla interprets section 25-11-117.1, subsection (1)'s provisions were designed for the much less likely outcome—i.e., the "exception"—while subsection (2)'s provisions are really the rule. The problem with this interpretation is that, based on the plain language of section 25-11-117.1, the Legislature designated subsection (2) as an "except[ion]" to subsection (1)'s rule.

¶28. Equally clear is revised Option 4-B's language that subsection (1) of section 25-11-117.1 is to govern who is paid the actuarial equivalent of remaining payments, not subsection (2). Miss. Code Ann. § 25-11-115(1) (Rev. 2010). So PERS's interpretation is not only reasonable, it is correct. Subsection (2)'s provisions are only to govern payment of checks already issued to the beneficiary but uncashed and other payments still payable to the beneficiary when he or she dies—like the cost-of-living adjustment PERS paid Kayla as Heather's successor.

¶29. "The primary rule of [statutory] construction is to ascertain the intent of the legislature *from the statute as a whole* and from the language used therein." *In re Guardianship of Duckett*, 991 So. 2d 1165, 1181-82 (¶37) (Miss. 2008) (emphasis added and citation omitted). And here, based on the structure of section 25-11-117.1, *when read as a whole*, it is clear the Legislature intended for subsection (1) to govern payment of the lump-sum actuarial equivalent of any remaining future payments, while subsection (2) is to govern payments

11

already sent to the beneficiary and any other benefit that "still payable at the death" of the beneficiary.

¶30.     Under this straightforward interpretation, the legislative intent in the revised Option 4-B lines up directly with Majorie's intent in selecting the old Option 4-B—that *her* statutory heirs would receive the actuarial equivalent of any remaining payments.   By contrast, Kayla's argument relies on her claim that it is plainly and unambiguously the Legislature's intent that she—who is of *no relation whatsoever to a state retiree*—should receive more than $100,000 in state retirement benefits.  We find the language of the statute simply does not support this view.

¶31.     Instead, the succinct rule is that the *retiree*'s family gets the actuarial equivalent of the remaining guaranteed payments when both the retiree and her designated beneficiary (or beneficiaries) are dead.  The limited exception is that any monthly check already written but not cashed by the deceased beneficiary (plus any cost-of-living adjustment for payments already made) shall be paid to that beneficiary's surviving family members.  PERS followed the rule and its limited exception.  Therefore, we affirm its decision.

¶32.  **THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED.   ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

        **LEE, C.J., BARNES, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  GRIFFIS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY ISHEE, J.**

        **GRIFFIS, P.J., DISSENTING:**

¶33. The question to be decided is: who is entitled to be paid $110,163.58, the amount of the remaining guaranteed annuity payments that were owed by PERS at the death of Marjorie Kahn's designated beneficiary, Heather Vaughn? The majority concludes that Marjorie's estate is entitled to the payment. I find that Heather's heirs are entitled to the payment. Therefore, I respectfully dissent.

FACTS AND PROCEDURAL HISTORY

¶34. I disagree slightly with the majority's version of the facts and procedural history. The majority makes it appear as if Kayla Vaughn was the only party in this litigation that argued Mississippi Code Annotated section 25-11-117.1 governed the outcome of this appeal. Such was not the case. PERS's executive director, its staff, Board of Trustees, and the circuit court all determined that section 25-11-117.1 governed this decision. Indeed, no party or court has argued or considered that the now-repealed version of Mississippi Code Annotated section 25-11-115(1) (Supp. 1999) may govern the outcome of this litigation until now.

¶35. The facts are not in dispute.

¶36. Marjorie retired on PERS disability retirement, effective November 1, 1999. She elected to receive benefits pursuant to Option 4-B under Mississippi Code Annotated section 25-11-115(1) (Supp. 1999). At that time, Option 4-B read:

> A reduced retirement allowance shall be continued throughout the life of the retirant, but with the further guarantee of payments to the named beneficiary, beneficiaries, or to the estate, for a specified number of years certain. If the retired member or the last designated beneficiary receiving annuity payments dies prior to receiving all guaranteed payments due, the actuarial equivalent of the remaining payments would be paid to the estate of the retired as intestate property.

13

Under the first sentence of this option, Marjorie selected a twenty-year period. As a result of her decision, Marjorie's benefits under Option 4B were to end on October 1, 2019.

¶37. Marjorie designated Heather, her daughter, as her beneficiary. Marjorie could have also named a contingent beneficiary in the event of Heather's death, but chose not to name a contingent beneficiary.

¶38. Marjorie died January 1, 2000. At that time, PERS had not paid any of the benefit payments. As a result, PERS began to make payments to Heather as Marjorie's designated Option 4-B beneficiary.

¶39. Heather died in August 2011. PERS continued to pay monthly benefits to Heather until her death.

¶40. Upon receipt of notice and verification of Heather's death, PERS checked Marjorie's file at PERS to see if she had named a contingent beneficiary in the event her primary beneficiary died before the expiration of the twenty-year period. If Marjorie had named a contingent beneficiary, PERS would have paid the remaining monthly benefits to that person. PERS's review determined that Marjorie had not named a contingent beneficiary. Because of Marjorie's death, Heather's death, and the lack of a contingent beneficiary, PERS had to identify to whom the remaining benefits should be paid.

¶41. PERS determined that Marjorie's file did not include the name of any next-of-kin. PERS sent a notice to Marjorie's family that informed them of Heather's death and stated that the remaining balance would be paid to Marjorie's statutory successors under Mississippi Code Annotated section 25-11-117.1(1).

14

¶42.   Toni Vaughn, Heather's stepmother, contacted PERS on behalf of her daughter, Kayla. Kayla was Heather's half-sister. Kayla and Heather had the same father, but Kayla was not related by blood to Marjorie. Kayla claimed that the remaining annuity benefits should be paid to her as Heather's next-of-kin and not to Marjorie's heirs. Through counsel, Kayla requested a hearing pursuant to Mississippi Code Annotated section 25-11-120, if PERS maintained its position that payment should be paid to Marjorie's heirs pursuant to section 25-11-117.1(1).

¶43.   By letter dated November 8, 2011, Pat Robertson, PERS's executive director, sent an administrative decision letter to Kayla's attorney that stated PERS's decision:

> Section 25-11-117.1(1) applies to benefits that are the property of the deceased member and that become payable to the successors of the deceased member in the absence of a named beneficiary. Section . . . 25-11-117.1(2) applies specifically to monthly benefits due and payable to a beneficiary who dies before he or she has the opportunity to negotiate or cash a check or checks issued before his or her death. Because monthly benefits are no longer payable to a beneficiary receiving monthly benefits upon his or her death, no further benefits were payable to Ms. Heather Ann Vaughn upon her death; thus, no benefits are payable to Ms. Heather Ann Vaughn's successor(s) from PERS.

¶44.   Kayla appealed the decision to the PERS Board of Trustees. A hearing was held before the Claims Committee of the Board of Trustees on January 24, 2012.

¶45.   Bob Rhoads, PERS senior policy advisor, testified that section 25-11-117.1 was actually enacted to be effective July 1, 2000, after Marjorie's death. Prior to that time, pursuant to section 25-11-115(1), "Option 4B provided that the present value of the remaining payments would be payable to the estate of the deceased member or retiree . . . ." Rhoads also testified that he was employed by PERS in 2000 when the PERS Board of

15

Trustees requested the new legislation as part of its proposed legislative package for that year. The request was made because the previous language gave PERS no alternative but to pay the present value of remaining benefits to the member/retiree's estate, which often required the opening or reopening of an estate many years after the death of the member/retiree. Rhoads stated, "it was the intent of the staff and the Board to not change the fact that the present value of the remaining payments [was] due to the successors of the deceased member or retiree. We just wanted to find a more convenient way for the successors to make a claim directly with PERS rather than through an Estate."

¶46. Following the hearing, the Claims Committee found "that the actuarial equivalent of the remaining payments are to be paid to the statutory successors of the deceased member/retiree, Marjorie Ann Kahn, as listed in Section 25-11-117.1(1)[,] because the designated beneficiary, Heather Ann Vaughn, was deceased when such benefits would have become payable, and Ms. Kahn did not designate a contingent beneficiary."

¶47. Pursuant to Mississippi Code Annotated section 25-11-120(2) (Rev. 2010), Kayla appealed the PERS decision to the Hinds County Circuit Court. The circuit court granted Kayla's request for a preliminary injunction and enjoined PERS from distributing funds from Marjorie's account during the pendency of the appeal. Then, on June 21, 2013, based on the briefs submitted, the circuit court entered its opinion and order that affirmed the decision of PERS.

ANALYSIS

I. *Marjorie's Intent*

16

¶48.    In its first section, the majority determines that "[b]ased on Option 4-B — as that option existed in 1999 — Marjorie's clear intent was that, should she and Heather both die before all guaranteed payments were made, Majorie's intestate estate — i.e., Marjorie's statutory heirs — would receive the actuarial equivalent of the remaining payments." To decide Marjorie's "clear intent," the majority *sua sponte* decided that the pre-amendment version of section 25-11-115(1) would govern the outcome of this case even though no party has argued it as governing law.

¶49.    PERS does not make this argument. Instead, PERS's supplemental brief, which asked whether the repealed statute applied, stated: "PERS would argue that the 2000 amendment to Miss. Code Ann. § 25-11-115 and the enactment of § 25-11-117.1, as it has been interpreted by PERS, do[] not deprive [Marjorie] of a significant contractual right." PERS argues that the post-amendment, current version of section 25-11-117.1 governs.

¶50.    Nevertheless, the majority cites *In re Estate of Dillon*, 632 So. 2d 1298, 1303-04 (Miss. 1994), and *Public Employees' Retirement System v. Porter*, 763 So. 2d 845, 849-50 (¶¶14-16) (Miss. 2000), for the general legal proposition that a PERS statute "cannot be applied in a way that defeats the clear intention of the deceased retired member." The majority does not explain how these cases are applicable or relevant. I am of the opinion that these cases are taken out of context or are factually distinguishable. Neither is directly on point.

¶51.    Indeed, PERS's argument that the amendment to section 25-11-115(1) "does not deprive [Marjorie] of a significant contractual right" should indicate that this Court should

17

not interject its research and legal reasoning to decide this case. The majority says it knows Marjorie's "clear intent," but I do not. To me, it is important that throughout this entire dispute, PERS's staff, PERS's executive director, PERS's Board of Trustees, and the circuit court judge have all relied on and based their decision on their interpretation of Mississippi Code Annotated section 25-11-117.1(1). This was the result of their reliance on the amended version of section 25-11-115(1), which referred to section 25-11-117.1(1) for resolution of this payment dispute.

¶52.   Furthermore, the pre-amendment language of Option 4-B does not decide our interpretation because the Legislature amended the statute without a savings clause. The effect of the Legislature's act was to abrogate the pre-amendment statutory language as if it never existed. The Mississippi Supreme Court summarized this general rule as follows:

> Many decisions in this state have affirmed the rule, which generally prevails, that the effect of a repealing statute is to abrogate the repealed statute as completely as if it had never been passed, and that a statute modifying a previous statute has the same effect as though the statute had all the while previously existed in the same language as that contained in the modified statute, unless the repealing or modifying statute contains a saving clause . . . .
>
> The result of this rule is that every right or remedy created solely by the repealed or modified statute disappears or falls with the repealed or modified statute, unless carried to final judgment before the repeal or modification, save that no such repeal or modification shall be permitted to impair the obligation of a contract or to abrogate a vested right.

*Stone v. Indep. Linen Serv. Co.*, 212 Miss. 580, 586-87, 55 So. 2d 165, 168 (1951) (internal quotations omitted); *see also USPCI of Miss., Inc., v. State*, 688 So. 2d 783, 786-87 (Miss. 1997) ("An amended act is ordinarily construed as if the original statute had been repealed,

18

and as far as any action after the adoption of the amendment is concerned, as if the statute had been originally enacted in its amended form.").

¶53.   I recognize that, on October 11, 1999, Marjorie executed her application for disability benefits, and she selected Option 4-B with twenty years certain.  She died less than three months later.  The law in effect at that time, Mississippi Code Annotated section 25-11-115(1), Option 4-B (repealed 2000), provided that "[i]f the retired member or the last designated beneficiary receiving annuity payments dies prior to receiving all guaranteed payments due, the actuarial equivalent of the remaining payments would be paid to the estate of the retired as intestate property."

¶54.   In fact, as of Marjorie's death, the Legislature determined that the deceased member's estate would be the catch-all recipient for Option 4-B benefits remaining after the death of the member and her last designated beneficiary.  However, this catch-all provision did not apply at Marjorie's death because her beneficiary was still alive.  Based on Marjorie's election, PERS was obligated to pay Heather $922.63 each month until her last check on October 1, 2019.

¶55.   Just before Heather began to receive the Option 4-B benefits, the Legislature amended the statutory scheme under which these benefits were paid.  The statutory change became effective on July 1, 2000.  Mississippi Code Annotated section 25-11-115(1) was amended, and Mississippi Code Annotated section 25-11-117.1 was created.  The amended language of section 25-11-115(1) was changed to read:

A reduced retirement allowance shall be continued throughout the life of the

19

retirant, but with the further guarantee of payments to the named beneficiary or beneficiaries for a specified number of years certain. *If the retired member or the last designated beneficiary both die before receiving all guaranteed payments due, the actuarial equivalent of the remaining payments shall be paid under Section 25-11-117.1(1).*

(Emphasis added). The Legislature changed the catch-all provision. Effective July 1, 2000, if both the member and last designated beneficiary died before the expiration of the sum-certain period, PERS was directed to pay the remaining benefits pursuant to Mississippi Code Annotated section 25-11-117.1(1). There was no savings clause in the legislation. The legislation did not distinguish between members who joined PERS before or after the effective date of July 1, 2000. PERS, the sponsor of this legislation, admits this fact.[4] And the majority does not address it. What is clear is that the Legislature directed that section 25-11-117.1 be applied to any instance occurring after July 1, 2000, where benefits remain after the death of both the member and the member's last designated beneficiary.

¶56. Throughout this matter, until now, the parties agreed that the current Mississippi Code Annotated sections 25-11-115(1) and 117.1 were the applicable statutes and governed the outcome of this dispute. They, however, disagreed as to the proper interpretation of those statutes. I disagree with and dissent from the majority's decision to apply the now-repealed

---

[4] During the administrative hearing, it was noted that Marjorie's application for benefits was completed before the statutory change to Option 4-B, which occurred on July 1, 2000. PERS senior policy advisor Bob Rhoads testified as to the effect that the pre-2000-amendment language had on the manner in which PERS paid the $110,163 in remaining benefits. Mr. Rhoads stated that "[t]he law was changed in 2000. How we paid the present value is applied prospectively to all. We didn't segregate if you retired before this date this rule applied; if you retire from and after this date, another rule applies."

version of section 25-11-115(1).

*II.     PERS's Interpretation*

¶57.   The majority also includes an alternate finding as to the resolution under section 25-11-117.1(1).  I disagree with and dissent from this interpretation.

¶58.   On October 11, 1999, Marjorie made a decision as to her PERS benefits when she signed her application for disability benefits and chose Option 4-B.  At Marjorie's death, PERS began to pay Heather the guaranteed monthly benefits.

¶59.   At the time of Heather's death, section 25-11-115(1), Option 4-B provided:

> A reduced retirement allowance shall be continued throughout the life of the retirant, but with the further guarantee of payments to the named beneficiary or beneficiaries for a specified number of years certain.  *If the retired member or the last designated beneficiary both die before receiving all guaranteed payments due, the actuarial equivalent of the remaining payments shall be paid under Section 25-11-117.1(1).*

(Emphasis added).  Section 25-11-117.1, titled "Recipients of additional benefits payable and checks not yet cashed when beneficiary dies or is disqualified," reads:

> (1)   *Except as otherwise provided in subsection (2) of this section*, where benefits are payable to a designated beneficiary or beneficiaries under this article and the designated beneficiary or beneficiaries as provided by the member on the most recent form filed with the system is deceased or otherwise disqualified at the time such benefits become payable, the following persons, in descending order of precedence, shall be eligible to receive such benefits:
>
> (a)   The surviving spouse of the member or retiree;
> (b)   The children of the member or retiree or their descendants, per stirpes;
> (c)   The brothers and sisters of the member or retiree or their descendants, per stirpes;
> (d)   The parents of the member or retiree;

21

> (e)     The executor or administrator on behalf of the member or retiree's estate;
>
> (f)     The persons entitled by law to distribution of the member or retiree's estate.
>
> (2)     *Any monthly benefits payable to a beneficiary who dies prior to cashing his or her final check(s) and/or any additional benefits payable pursuant to Section 25-11-112 still payable at the death of a beneficiary receiving monthly benefits shall be paid as follows*:
>
> > (a)     The surviving spouse of the beneficiary;
> >
> > (b)     The children of the beneficiary or their descendants, per stirpes;
> >
> > (c)     The brothers and sisters of the beneficiary or their descendants, per stirpes;
> >
> > (d)     The parents of the beneficiary;
> >
> > (e)     The executor or administrator on behalf of the beneficiary's estate;
> >
> > (f)     The persons entitled by law to distribution of the beneficiary's estate.

(Emphasis added).

¶60. Marjorie chose Option 4-B, under section 25-11-115(1). This governs how her benefits are to be paid.

¶61. The benefits are first paid to the retirant. Marjorie was entitled to "a reduced retirement allowance" during her life "but with the further *guarantee of payments* to the named beneficiary or beneficiaries for a specified number of years certain." *Id.* (emphasis added). Marjorie was entitled to be paid a monthly benefit during her life, and Marjorie was able to name a person who would be entitled to a "guarantee of payments" for twenty years. *Id.*

¶62. Next, at the death of the retirant, the benefits are to be paid to the retirant's designated

22

beneficiary.  *Id.*  Marjorie designated Heather to receive the "guarantee of payments."

Heather was paid benefits for approximately eleven years.

¶63.  At Heather's death, under Option 4-B, Marjorie could have designated a contingent

beneficiary to receive the remaining benefits.  She could have named any person, entity, or

her estate.  She chose not to name a contingent beneficiary.

¶64.  Because the guaranteed payments were not paid in full, section 25-11-115(1) provided

how the remaining benefits would be paid.  Option 4-B also provided that if the "retired

member [Marjorie] or the last designated beneficiary [Heather] both die before receiving all

guaranteed payments due, the actuarial equivalent of the remaining payments shall be paid

under Section 25-11-117.1(1)."  Miss. Code Ann. § 25-11-115(1).

¶65.  Therefore, I move to section 25-11-117.1, which  is titled, "Persons to whom benefits

payable in event of death of designated beneficiary."  Subsection (1) reads:

> Except as otherwise provided in subsection (2) of this section, where benefits
> are payable to a designated beneficiary or beneficiaries under this article and
> the designated beneficiary or beneficiaries as provided by the member on the
> most recent form filed with the system is deceased or otherwise disqualified
> at the time such benefits become payable, the following persons, in descending
> order of precedence, shall be eligible to receive such benefits: . . . .

The subsection begins with the phrase "[e]xcept as otherwise provided in subsection (2) of

this section."  We must consider the effect of this language; we cannot ignore it.

¶66.  If we consider subsection (1) without the reference to subsection (2), it says: "[W]here

benefits are payable to a designated beneficiary or beneficiaries under this article and the

designated beneficiary or beneficiaries . . . *is deceased or otherwise disqualified **at the time***

23

*such benefits become payable* . . . ." (Emphasis added). I read this language to say that subsection (1) only applies where the designated beneficiary "is deceased or otherwise disqualified at the time such benefits become payable." This language specifically looks at the point in time that the retirant dies and the guaranteed payment vests in the designated beneficiary(ies). I am of the opinion that subsection (1) only applies when the designated beneficiaries are dead or disqualified at the time the retirant dies, and then the amount of the guaranteed payments would be paid to the retirant's heirs based on subsection (1).

¶67.     Subsection (2) is clear that it applies to any guaranteed benefits vested in the beneficiaries. Subsection (2) reads: "[A]ny monthly benefits payable to a beneficiary who dies prior to cashing his or her final check(s) . . . shall be paid as follows . . . ." Here, there is no dispute that Heather died before "cashing . . . her final checks." As a result, I am of the opinion that the statutory scheme that controls the payment of the guaranteed payments is section 25-11-117.1(2), and the remaining balance should be paid to Kayla.

¶68.     Because I would reverse and render the judgment of the circuit court, I respectfully dissent.

          **ISHEE, J., JOINS THIS OPINION.**

24