MAXWELL, J.,
for the Court:
¶ 1. When' a member of Mississippi’s Public Employees’ Retirement System (PERS) chooses to receive reduced monthly retirement payments throughout her life in exchange for' guaranteed payments to her'beneficiary for twenty years, who gets the remaining guaranteed payments if both the retiree and the beneficiary die before the twenty-year period runs out? According-to PERS, the retiree’s surviving family members do. But appellant Kayla Vaughn says PERS is wrong. Instead, Kayla argues PERS is directed by statute to pay her, the beneficiary’s surviving family member, even though she is not related to the retiree.
¶2. PERS’s payment to the retiree’s surviving family members complied with both the language of the relevant statute and the retiree’s chosen payment' option before the statute existed.. Yet Kayla asks us to invert the statute and instead declare that an exception to the statute is really the rule. But the clear rule is that, when both the retiree and her designated beneficiary die, the actuarial equivalent of any future guaranteed payments goes to the retiree’s surviving family members. And the limited exception is that any uncashed checks PERS had issued to the beneficiary and any cost-of-living adjustment based on past payments to the beneficiary go to the beneficiaiys surviving family members.
*448 ¶3. After review, we find PERS followed this rule and its limited exception and, in doing so, gave effect to the retiree’s intent when selecting her payment option.
¶ 4. We therefore affirm.
Background Facts and Procedural History
¶ 5. Marjorie Kahn was a state employee and consequent member of PERS. In October 1999, she applied for disability retirement. Like other applicants, she was given a choice of payment’ options. She chose “Option 4-B.” See Miss.Code Ann. § 25-11-115(1) (Rev.1999). Under this option, Marjorie would receive “[a] reduced retirement allowance” throughout her life ip exchange for “the further guarantee of payment to the named beneficiary, beneficiaries, or to the estate, for a specified number of .years certain.” Id. And if she or her last designated beneficiary died “prior to receiving all guaranteed payments due,” then “the actuarial equivalent of the remaining payments would be paid to the estate of the retired as intestate property.” Id.
¶ 6. Marjorie named her daughter, Heather Vaughn, as her beneficiary. Marjorie named no other .contingent beneficiary. Soon after making these elections, Marjorie died. So under Option 4-B, PERS began making monthly payments to Heather in the amount of $922.63, guaranteeing these monthly payments for twenty years, through October 2019.
¶ 7. Six months after Marjorie’s death, the Legislature amended section 25 — 11— 115(1). The revised Option 4-B directed PERS, in the event “the retired member or the last designated, beneficiary both die before receiving all guaranteed payments due,” to pay “the actuarial equivalent of the remaining payments ... under [the newly created] Section 25-ll-117.1(l)[.]” Miss.Code Ann. § 25-11-115(1) .(Rev.2010) (citing Miss.Code Ann. § 25-11-117.1(1) (Rev.2010), enacted by 2000 Miss.’ Laws, Ch. 628, § 2 (H.B.1281)).
¶ 8. In August 2011, Heather also died. Traveling under .revised Option 4-B, PERS calculated the actuarial equivalent of the more than eight years of remaining guaranteed payments to be $110,163. PERS then looked to section 25-11-117.1(1), which, according to PERS, directed it to pay the remaining money to Marjorie’s statutory successors.[1] So PERS contacted Marjorie’s family to determine which of Marjorie’s surviving family members were entitled to this payment.
¶9. PERS also contacted Heather’s family, informing them that, based on subsection (2) of section 25-11-117.1, they were entitled to a prorated cost-of-living adjustment for the portion of the 2011-2012 fiscal year when Heather was still alive and received monthly payments. See Miss.Code Ann. § 25-ll-117.1(2).[2]
*449 ¶ 10. At this pointy Heather’s half-sister, Kayla Vaughn, objected to .PERS distributing the actuarial equivalent of the remaining payments to Marjorie’s statutory successors. Instead, Kayla insisted that even though she is not related to Marjorie,[3] PERS should give her the remainder of Marjorie’s retirement benefits.
¶ 11. As Kayla saw it, the $110,163 should have been paid to Heather’s statutory successors under section 25-11-117.1(2), not retiree Marjorie’s statutory successors under section 25-11-117.1(1). When PERS rejected her position, Kayla asked for and was granted an administrative hearing before the Claims Committee for the PERS Board of Trustees. See Miss.Code Ann. § 25-11-120(1) (Rev.2010). The Committee confirmed the $110,163 was to be paid to Marjorie's, successors under subsection (1), not Heather’s successors under subsection (2). Arid the Board of Trustees adopted the Committee’s recommendation.
¶ 12. Kayla then appealed to the Hinds County Circuit Court. See Miss.Code Ann. § 25-11-120(2), The circuit court affirmed PERS’s decision. But the court did grant Kayla’s request to enjoin PERS from disbursing the $110,163 to Marjorie’s successors until Kayla’s appeal before this court is finally resolved.
Discussion
I. Marjorie’s Intent
¶ 13. While PERS and Kayla hotly dispute the significance of the language in both revised Option 4-B and section 25-11-117.1, neither has disputed that this language controls,- despite the fact that. section. 25-11-117.1 was not even part of the PERS .retirement statutes when Marjorie selected Option 4-B. Still, our law is clear that these statutes cannot be applied in a way that defeats the clear intention of the deceased retired member. In re Estate of Dillon, 632 So.2d 1298, 1303-04 (Miss.1994); see also Pub. Emps' Ret. Sys. v. Porter, 763 S6.2d 845, 849-50 (¶¶ 14-16) (Miss.2000).
¶ 14. By selecting Option 4-B — as that option existed in 1999 — Marjorie’s intent was obvious. She chose the particular option that ensured her that if she and Heather both die before all guaranteed payments were made, Marjorie’s intestate estate — i.e., Marjorie’s statutory hems— would receive the actuarial equivalent of the remaining payments. This much is crystal clear. And it is inconceivable from the PERS statutes in effect at the time of Marjorie’s retirement application and soon-after death that, Marjorie intended any remaining retirement benefits would go to Heather’s heirs, should Heather die before all payments were .made.
¶ 15.- So even if we were to agree with the dissent that Kayla’s interpretation of sections- 25-11-115(1) and 25-11-117.1 was correct — which we do not — we would still have to reject this interpretation as applied to Marjorie’s retirement benefits. See Porter, 763 So.2d at 849-50 (¶¶ 14-16). Had PERS done what Kayla and the dissent suggest and paid Heather’s heirs, instead of Marjorie’s, it would have uncohsti- *450 tutionally impaired Marjorie’s contractual right to have her heirs receive the remainder of her retirement if both she and Heather ’ died before all guaranteed payments were made. Id. (citing U.S. Const, art. I, § 10; Miss. Const, art. 3, § 16).
¶ 16. Unlike Kayla’s and the dissent’s personal interpretations, PERS’s interpretation of section 25-11-117.1 has the advantage of actually effecting Marjorie’s intent. And because Kayla’s interpretation directly conflicts with Marjorie’s clear intent — that her next of kin, not Heather’s, would receive any remaining guaranteed payments if both she and Heather died before 2019 — we must reject it.
II. PERS’s Interpretation
¶ 17. Furthermore, PERS’s interpretation has the additional advantage of being supported by the statute’s language.

A. Standard of Review

¶ 18. Because this appeal raises a question of statutory interpretation, Kayla asserts we must review PERS’s decision de novo. While it is true that “[a]n agency’s interpretation of its governing statutes is reviewed de novo,” our supreme court has said we must conduct this review “with deference to the agency’s interpretation.” Miss. State & Sch. Emps’ Life & Health Plan v. KCC, Inc., 108 So.3d 932, 939 (¶ 20) (Miss.2013). “[Wjhen determining the most reasonable and appropriate interpretation of a statute, the agency’s interpretation is an, important factor that usually warrants strong consideration.” Diamond Grove Ctr., LLC v. Miss. State Dep’t of Health, 98 So.3d 1068, 1072 (¶ 9) (Miss.2012). So “unless an agency’s interpretation of a governing statute is repugnant to the plain meaning thereof, the courts are to defer to the agency’s interpretation.” Id.
.¶19. Stated differently, we only “give no weight to an agency interpretation” when it “is so plainly erroneous-or so inconsistent with either the underlying regulation' or statute as to be arbitrary, capricious, or contrary to the unambiguous language or best reading of a statute.” KCC, 108 So.3d at 939 (¶ 20). This means we cannot take the dissent’s approach and substitute PERS’s interpretation of section 25-11-117.1 with our personal preference of how to read the statute. We must instead uphold PERS’s decision to pay Marjorie’s heirs, not Heather’s, so long as its statutory interpretation was not so inconsistent with the relevant statutes as to be arbitrary and capricious. Because we find PERS’s decision was based on a reasonable interpretation of sections 25-11-115(1) and 25-11-117.1(1), consistent with the “best reading” of these statutes, and certainly not arbitrary and capricious, we must affirm.
B. “Monthly Benefits Payable ”
¶20. Revised Option 4-B directs that, when both the retiree and her named ben-éficiary have died, “the actuarial equivalent of the remaining payments shall be paid under Section 25-11-117.1(1).” Miss. Code Ann. § 25-11-115(1) (Rev.2010). Section 25-11-117.1(1) begins by noting there is an exception — “Except as otherwise provided in subsection (2).... ” Kayla argues this “prefatory phrase” is there to steer PERS immediately to subsection (2) and first determine if its provisions apply. If they do, then according to Kayla the rest of subsection (1) “is negated” and has no application whatsoever.
¶ 21. As one would imagine, Kayla argues subsection (2) applies here. Under this subsection, “Any monthly benefits payable to a beneficiary who dies prior to cashing his or her final check(s) and/or any additional benefits payable pursuant to *451 Section 25-11-112 still payable at the death of a beneficiary receiving monthly benefits shall be paid ... [to] brothers and sisters of the beneficiary” when the beneficiary has no surviving spouse or descendants. Miss.Code Ann. § 25-11-117.1(2). Kayla claims, since Option 4-B guaranteed Heather monthly payments for twenty years, the remaining eight years of payments were “monthly benefits payable to a beneficiary who dies pribr to cashing his or her final check(s)[.]” Miss.Code Ann. § 25-11-117.1(2).
¶22. In other words, Kayla is arguing that all twenty years worth of checks were “monthly benefits payable” to Heather the moment Marjorie died. She claims they belonged to the beneficiary, Heather, not the retiree, Marjorie. Thus, they should have passed to Heather’s, statutory successors. Kayla suggests that, if Marjorie had wanted one of her relatives to receive the money if Heather died, Marjorie should have named a contingency beneficiary.
¶ 23. Likewise, the dissent points to the lack of a contingent beneficiary as justification for awarding the remainder of Marjorie’s retirement benefits to someone that is not her heir. See Dis. Op. at (¶ 63). But the very fact Marjorie could have named a contingent beneficiary undercuts Kayla’s argument that all twenty years worth of retirement benefits fully vested in Heather the moment Marjorie died. Had Marjorie named a contingent beneficiary, the remaining payments would have gone directly to that person, not Heather. And Heather would have had zero ability to override Marjorie’s designation and redirect to whom the remaining payments would go in the event of her own death. Further, Marjorie did not have to name a contingent beneficiary to .control what would happen to her benefits if both-she and Heather died before 2019. That is because Option 4-B has a built-in contingency. In this scenario, the built-in contingency directed that the remaining benefits would be paid to Marjorie’s .heirs. So by selecting Option 4-B, Marjorie directed exactly what would happen to her benefits in this event.
■¶24. The dissent’s preferred method only works if all the remaining monthly payments vested in'Heather the moment Marjorie died. But this was not so. Heather only had á right to each monthly payment the month its became “payable” — i.e., due and owing. At no point could Heather have demanded PERS hand over the remaining payments early. Thus, the only “monthly benefits payable” to Heather at the time she died death were the monthly payments that had already become due." No future monthly payments were “payable” to Heather once she died. Instead, the remaining monthly payments had to be paid according to Option 4-B.

C. The Exception and the Rule

¶25. Revised Option 4-B is clear. It specifically, says that the. actuarial equivalent of the remaining payments shall be paid under subsection (1) of section 25-11-117.1. Revised Option 4-B does not reference section 25-11-117.1 generally, nor does it mention subsection (2) specifically. Instead, it specifically directs PERS to act under the provision of subsection (1) of 25-11-117.1. Miss.Code Ann. § 25-11-115(1) (Rev.2010).
¶ 26. Kayla skirts this clear directive by arguing subsection (1) begins with a redirect to subsection (2). The dissent echoes this view. See Dis. Op. at (¶ 65). Essentially, they argue the exception to subsection (l).is the actual rule. But this argument practically renders, the provisions of subsection (1) irrelevant — the very provision section 25-11-115(1) expressly says shall govern.
- ¶ 27. According to Kayla and the dissent, subsection (1) would only apply when *452 the beneficiary predeceases the retiree. While we agree that this scenario certainly is possible, the obvious anticipated outcome is that the retiree will predecease the beneficiary. After all, the whole reason a retiree names a beneficiary is for the perceived and much more, probable outcome that the retiree will die first. But as Kayla .interprets section 25-11-117.1, subsection (l)’s provisions were designed for the much less likely outcome — i.e., the-“exception” — while subsection (2)’s provisions are really the rule. The problem with this interpretation is that, based on the plain language of section 25-11-117.1, the Legislature designated subsection (2) as an “exception]” to' subsection (l)’s rule.
¶ 28. Equally clear is revised Option 4-B’s language that subsection (1) of section 25-11-117.1 is to govern who is paid the actuarial equivalent of remaining payments, not subsection (2). Miss.Oode Ann. § 25-11-115(1) (Rev.2010). So PERS’s interpretation is not only ‘reasonable, it is correct. Subsection (2)’s provisions are only to govern payment of checks already issued to the beneficiary but uncashed and other payments still payable to the beneficiary when he or she dies — like the cost-of-living ' adjustment PERS paid Kayla as Heather’s successor.
¶ 29. “The primary rule of [statutory] construction is to ascertain the intent of the legislature from the statute as a whole and from the language used therein.” In re Guardianship of Duckett, 991 So.2d 1165, 1181-82 (¶ 37) (Miss.2008) (emphasis added and citation omitted). Arid here, based on the structure of section 25-11-117.1, when read as a whole, it is clear the Legislature intended for subsection (1) to govern payment of the lump-sum actuarial equivalent of any remaining future payments, while subsection (2) is to govern payments already sent to the beneficiary and any other benefit that “still payable at the death” of the beneficiary.
¶ 30. Under this straightforward interpretation, the legislative intent in the revised -Option 4-B lines up directly with Marjorie’s intent in selecting the old Option 4-B — that her statutory heirs would receive the actuarial equivalent of any remaining payments. By contrast, Kayla’s argument relies on her: claim that it is plainly and unambiguously the Legislature’s intent that she — who is of no relation whatsoever to a state retiree — should receive more than $100^000 in state retirement benefits. We find the language of the statute simply does not support this view.
¶31. Instead,"the succinct rule is that the retiree’s family gets the actuarial equivalent of the remaining guaranteed payments when both the retiree and her designated beneficiary (or beneficiaries) are dead. The limited exception is that any monthly check already written but not cashed by the deceased beneficiary (plus any cost-of-living adjustment for payments already made) shall be paid to that beneficiary’s surviving family members. PERS followed the rule and its limited exception. Therefore, we affirm its decision.
¶ 32. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., BARNES, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND- IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY ISHEE, J.

. Under section 25-11-117.1(1);
Except as otherwise provided in subsection (2) of this section, where benefits are payable to a designated beneficiary or beneficiaries under this article and the designated beneficiary or beneficiaries as provided by the member on the most recent form filed with the system is deceased or otherwise'disqualified at the time such benefits become payable, the following persons, in descending order of precedence, shall be eligible to receive such benefits:
' (a) The surviving spouse of the member or retiree;
(b) The children of the member or retiree or their descendants, per stirpes;
(c) The brothers and sisters of the member or retiree or their descendants, per stirpes;
(d) The parents of the member or retiree;
(e) The executor .or administrator on behalf of the member or retiree's estate;
(f) The persons entitled by law to distribution of the member or retiree's estate.

. Under section 25-11-117.1(2):
Any monthly benefits payable to a beneficiary who dies' prior to cashing his or her final *449 check(s) and/or any additional benefits payable pursuant to Section 25-11-112 still payable at the death of a beneficiary receiving monthly benefits shall be paid as follows:
(a) The surviving spouse of the beneficiary;
(b) The children of the beneficiary or. their descendants, per stirpes;
(c) The brothers and sisters of the benefi- ■ ciary or their descendants, per stirpes;
(d) The parents of the beneficiary;
(e) The executor or administrator on behalf of the beneficiary's estate;
(f) The persons entitled by law to distribution of the beneficiary’s estate.

. Heather and Kayla shared the same father but had different mothers.