# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CT-01179-SCT

*KAYLA VAUGHN*

*v.*

*PUBLIC EMPLOYEES' RETIREMENT SYSTEM*
*OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

DATE OF JUDGMENT:    06/21/2013
TRIAL JUDGE:    HON. WINSTON L. KIDD
COURT FROM WHICH APPEALED:    HINDS COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:    JIM WARREN, III
    JACOB THOMAS EVANS STUTZMAN
    JOSHUA REID DANIEL
ATTORNEY FOR APPELLEE:    OFFICE OF THE ATTORNEY GENERAL
    BY: JANE L. MAPP
NATURE OF THE CASE:    CIVIL - STATE BOARDS AND AGENCIES
DISPOSITION:    AFFIRMED - 11/12/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**KING, JUSTICE, FOR THE COURT:**

¶1.    Kayla Vaughn appeals the decisions of Mississippi's Public Employees' Retirement System (PERS), the Hinds County Circuit Court, and the Court of Appeals, in which she says she was denied the benefits due to a member of PERS. The retiree died prior to collecting benefits, and her beneficiary died prior to collecting all of the retiree's benefits. As the surviving family member of the beneficiary, but not of the retiree, Kayla asserts that she is entitled to the remaining benefits. While PERS, the Hinds County Circuit Court, and the

Court of Appeals erred by applying the current versions of the PERS statutes, rather than the version in force when the retiree made her elections, we ultimately find that such error was harmless, and thus affirm the judgments of each of these entities in result only.

**FACTS AND PROCEDURAL HISTORY[1]**

¶2.        Marjorie Kahn was a state employee and consequent member of PERS. In October 1999, she applied for disability retirement. Like other applicants, she was given a choice of payment options. She chose "Option 4-B." *See* Miss. Code Ann. § 25-11-115(1) (Rev. 1999). Under this option, Marjorie would receive "[a] reduced retirement allowance" throughout her life in exchange for "the further guarantee of payment to the named beneficiary, beneficiaries, or to the estate, for a specified number of years certain." *Id.* And if she or her last designated beneficiary died "prior to receiving all guaranteed payments due," then "the actuarial equivalent of the remaining payments would be paid to the estate of the retired as intestate property." *Id.*

Marjorie named her daughter, Heather Vaughn, as her beneficiary. Marjorie named no other contingent beneficiary. Soon after making these elections, Marjorie died. So under Option 4-B, PERS began making monthly payments to Heather in the amount of $922.63, guaranteeing these monthly payments for twenty years, through October 2019.

Six months after Marjorie's death, the Legislature amended section 25-11-115(1). The revised Option 4-B directed PERS, in the event "the retired member or the last designated beneficiary both die before receiving all guaranteed payments due," to pay "the actuarial equivalent of the remaining payments . . . under [the newly created] Section 25-11-117.1(1)[.]" Miss. Code Ann. § 25-11-115(1) (Rev. 2010) (citing Miss. Code Ann. § 25-11-117.1(1) (Rev. 2010), *enacted by* 2000 Miss. Laws, Ch. 628, § 2 (H.B. 1281)).

In August 2011, Heather also died. Traveling under revised Option 4-B, PERS calculated the actuarial equivalent of the more than eight years of remaining guaranteed payments to be $110,163. PERS then looked to section 25-11-117.1(1), which, according to PERS, directed it to pay the remaining money to Marjorie's statutory successors.[] So PERS contacted Marjorie's

---

[1]The recitation of facts and procedural history is taken primarily from the Court of Appeals' decision.

family to determine which of Marjorie's surviving family members were entitled to this payment.

PERS also contacted Heather's family, informing them that, based on subsection (2) of section 25-11-117.1, they were entitled to a prorated cost-of-living adjustment for the portion of the 2011-2012 fiscal year when Heather was still alive and received monthly payments. *See* Miss. Code Ann. § 25-11-117.1(2).[]

At this point, Heather's [paternal] half-sister, Kayla Vaughn, objected to PERS distributing the actuarial equivalent of the remaining payments to Marjorie's statutory successors. Instead, Kayla insisted that even though she is not related to Marjorie,[] PERS should give her the remainder of Marjorie's retirement benefits.

As Kayla saw it, the $110,163 should have been paid to Heather's statutory successors under section 25-11-117.1(2), not retiree Marjorie's statutory successors under section 25-11-117.1(1). When PERS rejected her position, Kayla asked for and was granted an administrative hearing before the Claims Committee for the PERS Board of Trustees. *See* Miss. Code Ann. § 25-11-120(1) (Rev. 2010). The Committee confirmed the $110,163 was to be paid to *Marjorie's* successors under subsection (1), not Heather's successors under subsection (2). And the Board of Trustees adopted the Committee's recommendation.

Kayla then appealed to the Hinds County Circuit Court. *See* Miss. Code Ann. § 25-11-120(2). The circuit court affirmed PERS's decision. But the court did grant Kayla's request to enjoin PERS from disbursing the $110,163 to Marjorie's successors until Kayla's appeal . . . is finally resolved.

***Vaughn v. Pub. Emp.'s Ret. Sys.***, __ So. 3d __, 2015 WL 528336, No. 2013-CC-01179-COA, at *1- 2 (Miss. Ct. App. Feb. 10, 2015).

¶3.    In the appeal to the Court of Appeals, the parties focused on the language of the current versions of Section 25-11-115(1) and Section 25-11-117.1. At oral argument before the Court of Appeals, the issue was raised that the current language of these two sections did not go into effect until July 1, 2000, eight and one-half months after Marjorie selected Option

3

4-B on her application for disability retirement and six months after she died. Thus, the Court of Appeals ordered supplemental briefing on the following issues:

> (1) The relevance, if any, of the pre-2000-amendment language of "Option 4-B" – language that was in effect when Kahn applied for benefits on October 11, 1999, and language that had not yet been amended when she died in January 2000. This language, found in Mississippi Code Annotated Section 25-11-115(1) (**Rev. 1999**), stated:

>> **Option 4-B.** A reduced retirement allowance shall be continued throughout the life of the retirant, but with the further guarantee of payment to the named beneficiary, beneficiaries, or to the estate, for a specified number of years certain. If the retired member or the last designated beneficiary receiving annuity payments dies prior to receiving all guaranteed payments due, the actuarial equivalent of the remaining payments would be paid to the estate of the retired as intestate property.

> (2) The relevance, if any, of the fact that, under 2000 Miss. Laws, Ch. 628, § 23 (H.B. 1281), Mississippi Code Annotated Section 25-11-117.1 did not come into effect until July 1, 2000 – after Marjorie Kahn had died.

The Court of Appeals ultimately affirmed the judgments of the circuit court and PERS. It held that Marjorie's intent that the remaining payments be paid into *her* estate were Heather to die before all benefits were paid was clear. *Vaughn*, 2015 WL 528336, at *2. It found that paying Heather's heirs instead of Marjorie's heirs "would have unconstitutionally impaired Marjorie's contractual right to have *her* heirs receive the remainder of her retirement if both she and Heather died before all guaranteed payments were made." *Id.* at *3. It consequently rejected any interpretation of Section 25-11-117.1 that conflicted with Marjorie's clear intent, and then went on to hold that "PERS's interpretation [of the new statutes] has the additional advantage of being supported by the statute's language." *Id.* The Court of Appeals then interpreted the current Sections 25-11-115 and 25-11-117.1, and found

4

that under these sections, the benefits should be awarded to Marjorie's statutory beneficiaries, rather than Heather's statutory beneficiaries. Kayla filed a petition for writ of certiorari with this Court, arguing that the Court of Appeals erred in applying the statute as it was in 1999 because the statute did not have a savings clause and the Court of Appeals could not discern Marjorie's intent, and further arguing that the Court of Appeals' interpretation of Section 25-11-117.1 contravenes the plain language of the statute. We granted the petition primarily to address the Court of Appeals' decision to interpret Section 25-11-117.1, the interpretation of which is a matter of first impression in this Court.

## ANALYSIS

¶4.     When this Court reviews an administrative agency's decisions, the Court may not overturn the agency's judgment unless the agency's decision is not supported by substantial evidence, is arbitrary or capricious, is beyond the scope or power granted to the agency, or violates constitutional rights. *Pub. Emp.'s Ret. Sys. v. Porter*, 763 So. 2d 845, 847-48 (Miss. 2000).

¶5.     The Court of Appeals was correct in applying the version of the statute in place when Marjorie chose her option and when she died. However, it did not need to go the extra step to interpret the meaning of Section 25-11-117.1. Marjorie simply gets the benefit of the contract that she made; Section 25-11-117.1 has no relevance.

¶6.     "No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts . . . ." U.S. Const. art. I, § 10. Additionally, the Constitution of the State of Mississippi provides that "[e]x post facto laws, or laws impairing the obligation

5

of contracts, shall not be passed." Miss. Const. art. 3, § 16. "The Contract Clauses of the state and federal constitutions are substantially similar." *Porter*, 763 So. 2d at 849. They forbid the Legislature from passing laws that will impair the obligation of contracts. *Id.* at 850. "[T]he 'obligation' of a contract, in a constitutional sense, depends on the law in effect when that contract was made." *Id.* "[T]he legislature may alter a retirement system member's contractual rights; but if doing so subjects the member to a substantial disadvantage, a substantial new advantage must also be conferred upon that member in order to pass constitutional muster." *Id.* The statutory revisions at issue deprived Marjorie of a significant contractual right, the right to choose how her benefits were to be disbursed and to whom, without conferring any additional benefits to her. *See id.* At the time Marjorie chose her retirement benefits in 1999, she chose that, if she and Heather were to predecease the end date of the benefits, the benefits would go to her estate as intestate property, and thus, her heirs. Section 25-11-115, as amended, and Section 25-11-117.1, change this contract and designate themselves the person or persons to whom the benefits will be distributed. Thus, it was error for PERS and the courts to use current Sections 25-11-115 and 25-11-117.1 to determine who receives Marjorie's benefits, as all involved should have looked to former Section 25-11-115 as part and parcel of the contract between Marjorie and PERS. Because former Section 25-11-115 should resolve the issue, the Court of Appeals had no reason to go one step further and affirm PERS's interpretation of Section 25-11-117.1.

¶7.   However, we find that in this particular case, the application of Section 25-11-117.1(1) to Marjorie's benefits was harmless error. In doing so, we neither endorse nor

6

rebuke the general interpretations of Section 25-11-117.1 by PERS, the circuit court, and the

Court of Appeals. We make no pronouncement as to how to interpret this section, a matter

of first impression, or on whether PERS is correctly interpreting it as a general matter, and

nor should have the Court of Appeals. Our finding of harmless error in this regard is limited

to this case, and this case only.

¶8.     PERS and the Court of Appeals found that Section 25-11-117.1(1) applies to the

distribution of Marjorie's benefits in this case. That section provides that under certain

conditions,[2] certain benefits are payable to "the following persons, in descending order of

precedence":

    (a) The surviving spouse of the member or retiree;

    (b) The children of the member or retiree or their descendants, per stirpes;

    (c) The brothers and sisters of the member or retiree to their descendants, per
    stirpes;

    (d) The parents of the member or retiree;

    (e) The executor or administrator on behalf of the member or retiree's estate;

    (f) The persons entitled by law to distribution of the member or retiree's estate.

Miss. Code Ann. § 25-11-117.1(1) (Rev. 2010). The law when Marjorie chose how to

distribute her benefits provided that, should she and her designated beneficiary both die

before all benefits were distributed, the benefits would be paid to Marjorie's estate as

intestate property. Miss. Code Ann. § 25-11-115 (Rev. 1999). Intestate property is

---

[2]Again, we offer no opinion as to whether those conditions were actually met in this
case.

distributed: 1) to a spouse and children, or the children's descendants (sharing their deceased parent's share), in equal parts; 2) to siblings, or their descendants (sharing their deceased parent's share), and parents in equal parts; 3) to grandparents, aunts and uncles, in equal parts; and then 4) to the next of kin in equal degree, computing by the rules of civil law. Miss. Code Ann. §§ 91-1-3, 91-1-7 (Rev. 2013).

¶9.     While not exactly the same, the PERS statutory list of who is to receive benefits and the list of heirs to receive intestate property are substantially similar such that the end result of applying the law as it stood in 1999 and applying Section 25-11-117.1(1) will be similar, if not identical.  Thus, while PERS applied the incorrect law, which impacts Marjorie's contractual rights, because the end result is substantially similar to that for which Marjorie contracted, we find that in this specific case, the incorrect application was harmless error. Because the end result is so similar, it is difficult to say that this specific application of Section 25-11-117.1 would unconstitutionally impair Marjorie's contractual rights.  To reiterate, we limit this holding to this specific case only, and make no findings on the general interpretation of Section 25-11-117.1, or on whether PERS's general interpretation is correct.

¶10.    For the aforementioned reasons, we affirm the result, if not the rationale, of PERS, the Hinds County Circuit Court, and the Court of Appeals.

¶11.    **AFFIRMED.**

        **WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR.**

8